UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WILLIAM W. RIDDLE, III | ) | CASE NO. 20-30026(1)(7) |
| | ) | |
| Debtor(s) | ) | |
| | ) | |
| J. RETTENMAIER USA LP | ) | AP NO. 20-3021 |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| WILLIAM W. RIDDLE, III | ) | |
| | ) | |
| Defendant(s) | ) | |

**MEMORANDUM-OPINION**

This matter came before the Court for trial on the Complaint of Plaintiff J. Rettenmaier USA LP ("Rettenmaier") to Object to Debtor's Discharge. Pursuant to 11 U.S.C. §§ 727(a)(2)(A), (B), (a)(3), (a)(4)(A), (a)(5) and (a)(6)(A). The Court considered the testimony of the Debtor/Defendant William W. Riddle, III ("Debtor"), the deposition testimony of Greg Boozer, the exhibits submitted at trial and the arguments of counsel. At the close of the Plaintiff's case, the Debtor made an Oral Motion for Directed Verdict. After considering the evidence and testimony, as well as the arguments of counsel, the Court granted the Debtor's Motion for Directed Verdict. The following constitutes the Court's Findings of Fact and Conclusions of Law in support of the entry of the Directed Verdict.

**FINDINGS OF FACT**

Debtor was the Chief Executive Officer of Sunstrand LLC, ("Sunstrand") from 2014 to 2020. The Debtor has a Ph.D and three mechanical engineering degrees. Sunstrand was in the business of converting hemp into finished goods. Sunstrand began having financial problems in late 2018 and 2019. This was a result of a breach by potential investors of two binding Letters of Credit in excess of $20 million. By mid-2019, Sunstrand owed $10 million in secured and unsecured debt to approximately 200 creditors. Secured creditors began repossessing their collateral.

In 2019, Sunstrand was notified by an attorney representing Plaintiff that it was in default on a Promissory Note from Plaintiff that listed Sunstrand as the Borrower and Debtor as the Guarantor in the amount of $400,000 pertaining to an Equipment Purchase and Sale Agreement between the parties. Sunstrand had missed four monthly payments of $7,548.49 each and owed the Plaintiff $238,835.60.

Plaintiff sued Sunstrand and Debtor individually, in Michigan State Court, and obtained a default judgment on August 23, 2019 in the amount of $244,261.88, plus interest at the rate of $32.72 per day. Plaintiff then had the default judgment domesticated in the Jefferson Circuit Court in Kentucky on August 20, 2019. Debtor was aware that on September 20, 2019, Plaintiff could begin collecting on the default judgment in Kentucky.

Despite Debtor's best efforts to keep Sunstrand afloat, the company began to wind down its business operations due to overwhelming debt. Of its 45 investors and nearly 200 creditors, none instituted legal proceedings against Debtor and Sunstrand, with the exception of the Plaintiff.

Debtor had personally guaranteed a large portion of Sunstrand's debt, and although Debtor was forced to file for bankruptcy protection, Sunstrand did not file for bankruptcy protection.

Plaintiff, however, failed to properly perfect its security interest in any collateral of the Debtor or Sunstrand.

On January 6, 2020, Debtor filed his Voluntary Petition seeking relief under Chapter 7 of the United States Bankruptcy Code. On Schedule E/F, Creditors Who Have Unsecured Claims, Debtor listed a debt of $244,261 owed to the Plaintiff. Debtor had secured debts totaling $39,602 and unsecured debts totaling $10,120,251.37.

Despite Plaintiff's efforts at trial to elicit extensive testimony from the Debtor regarding his bank accounts and financial transactions prior to the date Debtor filed his Chapter 7 Petition on January 6, 2020, Plaintiff's claims of nondischargeability under 11 U.S.C. §§ 727(a)(2)-(6), can be distilled down to three transactions.

First, Plaintiff contends that because Debtor removed all of his funds from his account at Republic Bank, prior to September 20, 2020, the first day Plaintiff could garnish the account, his discharge should be denied. Debtor testified that he closed both Sunstrand's and his own personal bank accounts at Republic Bank because he could no longer conduct business with Republic Bank. He had several convertible Notes with Republic Bank and had discussed getting a business loan from the Bank, however, after exchanging documents with the Bank, it was clear that Republic was not going to loan the Debtor or Sunstrand any further funds. Debtor then closed the Republic account and opened a new bank account at First Savings Bank.

The Debtor's testimony on this issue was unrefuted. Plaintiff did not call any witnesses or representatives from Republic Bank to discredit the Debtor's testimony and the Court found the Debtor credible.

Shortly after opening the Republic Bank account, Plaintiff garnished the account and recovered approximately $700 from Sunstrand's account. After this happened, Debtor no longer put funds in this account. Debtor then opened an account at PNC Bank one week later. Debtor did not inform Plaintiff that he and Sunstrand had opened a new account at PNC. However, Debtor had no legal obligation to do so.

On December 9, 2019, Debtor wired $10,000 from the PNC account to a bank account at Opportunity Bank in Montana. The records produced at trial indicated that Debtor then made a $10,000 withdrawal from the account. Debtor used that $10,000 to pay toward the balance owed on his wife's American Express credit card. Debtor explained that he and his wife had used his wife's credit card to pay their family expenses. Sunstrand owed Debtor money because he had used the credit card to pay many out-of-pocket business related expenses. Debtor testified that the $10,000 payment on the American Express card was Debtor's reimbursement for the out-of-pocket business expenses he charged to the card. Plaintiff failed to prove there was anything nefarious about this payment. Plaintiff called no witnesses to refute the Debtor's testimony on this transaction.

The next transaction questioned by Plaintiff was a $25,000 payment Debtor received from Gibbs International ("Gibbs") in 2019. Debtor explained that Gibbs was a secured creditor of Sunstrand that foreclosed on its lien. Debtor and Sunstrand assisted Gibbs in finding buyers for the equipment Gibbs had foreclosed upon. Debtor testified that he had no expectation of being paid for assisting Gibbs in finding buyers for the equipment.

Debtor also testified that the day before they received the $25,000 payment, he received a call from Greg Boozer with Gibbs in late November 2019. Mr. Boozer told him that Gibbs wanted to pay him a $25,000 commission on the equipment sales. Debtor told Mr. Boozer not to deposit the

money into his account because his accounts were tied up at the time. He had been in discussions with his attorney about filing a bankruptcy petition, although no petition had been filed at that time. Therefore, he told Mr. Boozer to deposit the $25,000 into his wife's bank account. Debtor regularly deposited funds in this account to pay for family expenses. Gibbs then deposited the $25,000 into his wife's bank account the following day, an account used by Debtor and his wife for family expenses. Gibbs also issued a 1099 for the $25,000 payment to Debtor's wife and she included it as income on her 2019 taxes.

Plaintiff contends that this payment was not disclosed by Debtor when he was specifically asked at his deposition one week before the payment was made whether or not he was expecting any income in the next 90 days. Debtor truthfully answered that at that time he was not expecting any payments. He only learned that Gibbs was going to pay the money one day before the payment was made. This testimony was truthful at the time it was made and was unrebutted by Plaintiff at trial.

The final transaction that Plaintiff contends was fraudulent was a $10,000 gift that was deposited into Debtor's wife's bank account by Julie Hammond, the wife of IndHemp's President, Ken Elliott. IndHemp had entered into an Asset Purchase Agreement with Sunstrand in late December 2019. Ms. Hammond and Mr. Elliott became friends of the Debtor and his wife during these negotiations. Julie Hammond and Ken Elliott decided to gift the Debtors $10,000 in order to allow Debtor and his family to have a nice Christmas, as they were aware that the family was experiencing financial difficulties. The funds were deposited into Debtor's wife's account and was used for family expenses. Debtor testified about this gift at his Section 341 meeting and as with the prior transactions referenced herein, this evidence was also undisputed at trial.

**LEGAL ANALYSIS**

The Plaintiff's case consisted of calling the Debtor for live testimony and the video deposition testimony of Greg Boozer of Gibbs International, one of Debtor's creditors. Plaintiff did not call a representative of the Plaintiff's corporation to testify at trial. At the conclusion of Plaintiff's case, the Defendant made an Oral Motion for Directed Verdict. The Court granted Debtor's Motion stating there was no evidence presented to establish that Debtor's actions met any of the requirements needed to deny Debtor a discharge under 11 U.S.C. §§ 727(a)(2)-(6).

In a nondischargeability proceeding, the burden of proof in seeking to deny the Debtor's discharge is on the Plaintiff. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). The Plaintiff failed to carry its burden of proof. The Sixth Circuit has stated that the provisions of § 727(a) "are to be construed liberally in favor of granting debtors the fresh financial start contemplated by the Bankruptcy Code and the Supreme Court, and construed strictly against parties seeking to deny the granting of a debtor's discharge." *Jarrett v. Jarrett (In re Jarrett)*, 417 B.R. 896, 901 (Bankr. W.D. Tenn. 2009), citing *Meyers v. International Revenue Service (In re Meyers)*, 196 F.3d 622, 624 (6th Cir. 1999). Denial of discharge is only for the most egregious cases and not where acts or omission may have been inadvertent or excusable. *Id.*

1. 11 U.S.C. § 727(a)(2).

A bankruptcy discharge can be denied under 11 U.S.C. § 727(a)(2) when the debtor, with intent to hinder, delay or default a creditor, has concealed property of the estate within one year prior to the petition or after the date of the petition. *JM Burns Steel Supply, Inc. v. Floyd, (In re Floyd)*, 2019 WL 4054106, (Bankr. W.D. Ky. 2019). There was no evidence presented that Debtor's actions were taken with the intent to hinder, delay or defraud a creditor by concealing property of the estate.

In each of the transactions challenged by Plaintiff at trial, the Debtor rebutted any inference that he was trying to hide assets or hinder or delay the creditor's efforts. The Plaintiff simply failed to establish the elements of its claims under this Count. Debtor did not hide his bank accounts and explained his reasons for closing the accounts and ending his business relationships with those banks. He timely amended his Schedules to include this information and was forthright with creditors when asked to identify the accounts. Plaintiff did not establish any "badges of fraud" as set forth in *In re Floyd*. Plaintiff failed to present evidence at trial sufficient to support of its claims under this Count.

2. <u>11 U.S.C. § 727(a)(3)</u>.

In Count III of the Complaint, Plaintiff alleged Debtor concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, records and papers from which his financial condition or business transaction might be ascertained. Plaintiff failed to present evidence at trial sufficient to support this claim.

3. <u>11 U.S.C. §727(a)(4)</u>.

In Count IV of the Complaint, Plaintiff alleged Debtor knowingly and fraudulently, in or connection with his bankruptcy case, made a false oath or account. The Court found after listening to the evidence, that Plaintiff failed to set forth evidence to sustain this claim at trial. Plaintiff repeatedly contended Debtor falsified and intentionally omitted information in his Schedules, but the Court determined that Debtor timely amended his Schedules, which were done at the request of the Trustee at the Section 341 meeting. There was no evidence that such omissions were made knowingly or fraudulently.

  4.  <u>11 U.S.C. § 727(a)(5)</u>.

In Count V, Plaintiff alleged Debtor failed to explain satisfactorily, any loss of assets or deficiency of assets to meet his liabilities. Again, the Court determined that Plaintiff failed in its burden of proof on this claim. The Court found the Debtor's explanation on the loss of assets or any deficiency of assets satisfactory at trial. Again, the Plaintiff failed to rebut this evidence.

  5.  <u>11 U.S.C. § 727(a)(b)(A)</u>.

Under this Section, the Court may deny a debtor his discharge where the debtor has refused to obey any lawful order of the court. No evidence was presented by Plaintiff at trial in support of this claim. In fact, the Court found the Debtor to be truthful and forthcoming, and credible in his trial testimony. The trial court is in the best position to hear the evidence presented and to reach conclusions as to the veracity of the witness. This claim also failed for lack of evidence.

The Plaintiff relied on this Court's Opinion in *In re Floyd*, 2019 WL 4054106 (Bankr. W.D. Ky. 2019), in support of its claims herein. This case did not present circumstantial evidence that supported the "badges of fraud" analysis discussed in the case. Instead, as the Court stated at trial, Plaintiff took an approach in this case as if it could prove its case by strict liability. That is not the standard in a nondischargeability case.

The Debtor relied heavily on an unpublished Opinion, *United States Trustee v. Varner (In re Varner)*, 2015 Bankr. LEXIS 2144 (Bankr. N.D. Ohio 2015). The Court recognizes the Opinion is not for publication or citation. However, the Opinion cites numerous published decisions for the proposition that the party attempting to deny discharge must prove each element of a § 727 action by a preponderance of the evidence, citing Fed. R. Bankr. 4005; *Barclays/Am Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir. 1994). If the Plaintiff is able to prove each element

of the claim, then the burden shifts to the debtor to rebut that evidence. Here, the Plaintiff did not carry its initial burden of proof.

Like the debtor in *Varner*, what the Plaintiff attempted to prove here was that a debtor who had well over $10 million in unsecured debt on his Petition, was at risk of losing his discharge for allegations regarding $55,000 in transfers that he was completely able to explain. Like the debtor in *Varner*, Debtor had nothing to gain by making false statements regarding these transfers. It makes little sense that he would risk his discharge for such little debt compared to the amount of debt to be discharged. Like the debtor in *Varner*, the Court found the Debtor credible in his testimony and the Plaintiff's case woefully lacking in evidence.

At the close of the Plaintiff's case, the Debtor made an oral Motion for a Directed Verdict. Because this was a bench trial, the motion is treated as a motion for a judgment on partial findings under Fed. R. Civ. P. 52(c), made applicable herein by Bankruptcy Rule 7052. Under subsection (c) of Rule 52, the court "may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."

The Plaintiff had to prove each of the claims asserted in the Complaint by a preponderance of the evidence. As the above analysis of the evidence presented by the Plaintiff establishes, the Plaintiff failed to carry its burden of proof under 11 U.S.C. § 727. Therefore, the Court granted the Debtor's Motion for a Directed Verdict.

## **CONCLUSION**

For all of the above reasons, the Court **GRANTED** the Debtor's Motion for a Directed Verdict. An Order incorporating the findings herein and dismissing this case, with prejudice, accompanies this Memorandum-Opinion.

Joan A. Lloyd
United States Bankruptcy Judge
Dated:  September 29, 2021

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WILLIAM W. RIDDLE, III | ) | CASE NO. 20-30026(1)(7) |
| | ) | |
| Debtor(s) | ) | |
| | ) | |
| J. RETTENMAIER USA LP | ) | AP NO. 20-3021 |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| WILLIAM W. RIDDLE, III | ) | |
| | ) | |
| Defendant(s) | ) | |

## **ORDER**

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Motion for Directed Verdict of Defendant/Debtor William Riddle, III, be and hereby is, **GRANTED**. This case is dismissed, with prejudice.

_____
Joan A. Lloyd
United States Bankruptcy Judge
Dated: September 29, 2021